IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CLARENCE WRIGHT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-04-2287 |
| | § | |
| FMC TECHNOLOGIES, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Pending before the Court is Defendant FMC Technologies, Inc.'s Motion for
Complete Summary Judgment (Document No. 12).  Having considered the motion,
submissions, and applicable law, the Court determines the motion should be granted.

## BACKGROUND

Plaintiff Clarence Wright ("Wright") filed suit on June 16, 2004, alleging FMC
Technologies, Inc. ("FMCTI") violated 42 U.S.C. § 12112(a) of the Americans with
Disabilities Act ("ADA") by terminating his employment in July 2003.  FMCTI
designs, manufactures, and services technologically sophisticated systems and products
for its customers through its Energy Production Systems, Energy Processing Systems,
Food Tech, and Airport Systems divisions.   FMCTI initially employed Wright as a
temporary worker assigned to the Energy Production Systems division in Houston.

FMCTI hired Wright directly as an assembler on July 31, 2000.  During his employment, performance evaluations showed Wright needed to improve in areas related to work quality, productivity, and job knowledge.[1]

In January 2002, Wright was diagnosed with cardiomyopathy and malignant hypertension, which Wright now claims resulted from his employment with FMCTI.[2] At the recommendation of his doctor, Wright took a leave of absence.  FMCTI provided Wright with short-term disability benefits during his absence.  In April 2002, Wright returned to work.  Because Wright was unable to lift more than twenty pounds or push or pull more than fifty pounds, FMCTI transferred him to another department to perform light duty work.  Wright remained in this position for approximately one year until FMCTI transferred him back to his former position as an assembler.[3] However, due to his physical limitations and the side-effects of his medication, Wright could not fully function as an assembler.

Wright again took a leave of absence from work on April 28, 2003, which lasted

---

[1]Wright received a written warning in July 2000 for failing to follow company procedures and a written warning in April 2003 for poor performance.  In addition, Wright's 2001 and 2002 performance evaluations showed he needed improvement.

[2]Wright believes his employment with FMCTI caused his heart condition because he had to work in very cold weather and he had allegedly never been sick before. However, there is no evidence substantiating his subjective belief.

[3]FMCTI transferred Wright because he failed to follow instructions while performing a job assignment.

until May 27, 2003. When Wright returned, FMCTI placed him on a 90-day probation period due to poor performance. Specifically, the probation period mandated compliance with FMCTI's short-term disability policy, requiring Wright to inform his supervisor, David Haydon ("Haydon"), of his return-to-work status on a regular basis if he was going to be on medical leave for over six weeks. Nearly three weeks after FMCTI placed Wright on probation, on June 13, 2003, Wright's health problems again forced him to take leave from his job.[4]

FMCTI's insurance carrier certified Wright's short-term disability coverage from June 16 until July 27, 2003. While Wright was out on leave, Michelle Risinger ("Risinger"), a Human Resources Representative for FMCTI, inquired with Haydon regarding Wright's compliance with the short-term disability policy. Risinger learned from Haydon that Wright had not kept Haydon properly informed during Wright's absence. Risinger made additional attempts to contact Wright in July to no avail. Risinger made the decision to terminate Wright and instructed Haydon to inform Wright of the decision. When Wright returned on July 28, 2003, Haydon informed Wright that FMCTI was terminating his employment. Risinger sent Wright a follow-up letter, dated August 28, 2003, stating his termination resulted from his failure to contact Haydon with an expected date-of-return while he was on medical leave. Thus, after

_____

[4]Wright was diagnosed with acute depression in June 2003.

receiving a right-to-sue letter, Wright timely filed suit almost one year later, claiming FMCTI discriminated against him due to his disability.

On May 3, 2005, FMCTI filed its motion for summary judgment, contending: (1) Wright's heart condition and depression did not substantially limit a major life activity; (2) Wright was not qualified for his job when FMCTI terminated him; (3) Wright did not introduce evidence FMCTI treated non-disabled employees more favorably than it treated Wright; and (4) Wright is unable to meet his burden of proving FMCTI terminated Wright's employment due to a disability and not for failing to update Haydon of his return-to-work status.

In contrast, Wright claims he complied with FMCTI's policy. In June 2003, Wright left a voicemail with Debra Gray ("Gray") in Human Resources informing her of his status. Gray forwarded this voicemail to Haydon, who later confirmed its receipt.[5] Wright allegedly spoke to his supervisor, Haydon, on or about July 18, 2003, but Risinger's affidavit expressly states Wright had not kept Haydon adequately informed.

## STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine issue as to any material

---

[5]However, the email documenting this communication also conveys Haydon was unable to later reach Wright by phone when seeking additional details.

fact and [] the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The court must view the evidence in a light most favorable to the non-movant. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to come "forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting FED. R. CIV. P. 56(e)). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conclusory allegations unsupported by specific facts will not prevent an award of summary judgment; the plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint. *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 713 (5th Cir. 1994). Thus, the non-movant's burden cannot be satisfied by conclusory allegations,

unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998).  It is not the function of the court to search the record on the non-movant's behalf for evidence which may raise a fact issue. *Topalian v. Ehrman*, 954 F.2d 1125, 1137 n.30 (5th Cir. 1992).

## LAW AND ANALYSIS

_____The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a) (2000).  In order to establish a *prima facie* case, Wright must show: (1) he has a disability recognized under the ADA; (2) he was qualified to be an assembler for FMCTI at the time of his termination; "(3) he . . . was subject to an adverse employment action; and (4) he . . . was replaced by a non-disabled person or was treated less favorably than non-disabled employees." *Burch v. Coca-Cola Co.*, 119 F.3d 305, 320 (5th Cir. 1997) (citations omitted).  If the plaintiff can prove a *prima facie* case of disability discrimination, courts will infer discrimination and give the defendant an opportunity to rebut this inference. *Tex. Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981).

Here, it is undisputed that Wright suffered an adverse employment action when FMCTI terminated his employment on July 28, 2003.  However, in order to establish a *prima facie* case under the ADA, the plaintiff must prove all four elements.  *See, e.g.,*

6

*Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004); *Blanks v. S.W. Bell Communications, Inc.*, 310 F.3d 398, 400-02 (5th Cir. 2002).

A.   Wright does not have a disability recognized under the ADA

      To meet the first prong of his *prima facie* case, Wright must prove he is a qualified individual with a disability under the ADA. 42 U.S.C. § 12112(a); *Blanks*, 310 F.3d at 400-01. To do so, Wright must show one of the following: (1) he has a mental or physical impairment that substantially limits one or more major life activity; (2) he has a record of having such an impairment; or (3) FMCTI regards Wright as disabled. 42 U.S.C. § 12102(2) (2000). Wright asserts he has a disability and FMCTI regarded him as disabled.

      Wright claims his diagnosis of cardiomyopathy and malignant hypertension, as well as depression, warrant a finding he is disabled under the ADA.[6] According to the Equal Employment Opportunity Commission ("EEOC"), an impairment will "substantially limit" a major life activity only if the person is subsequently either unable to perform an activity which the average person is capable of performing or severely restricted in his/her ability to perform a major life activity compared to the average person. *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 195-96 (2002). The Supreme

---

[6]In his complaint, Wright does not assert he is disabled because of depression. However, the Court will address this condition because Wright mentioned he was diagnosed with depression prior to his termination from FMCTI.

Court held "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."  *Id.* at 198. Although the ADA does not specify what constitutes a major life activity, the EEOC provides some guidance, specifically including "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working" within the range of major life activities.  29 C.F.R. § 1630.2(i) (2004); *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998).

Three factors aiding courts in determining whether a proposed disability substantially limits a life activity are (1) "[t]he nature and severity of the impairment;" (2) "[t]he duration or expected duration of the impairment;" and (3) "[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."  29 C.F.R. § 1630.2(j)(2).  Wright argues his heart condition is both severe and of a long duration because of the amount of time he has spent in the hospital or unable to work since his diagnosis.  Generally, the disability must be severe and, if not permanent, at least of a long duration.  *Pryor,* 138 F.3d at 1026  ("[T]emporary, non-chronic impairments of short duration, with little or no longer term or permanent impact, are usually not disabilities.").  At his deposition, Wright stated taking the medication helped his heart problems and made him "pretty active."  Moreover, Wright

conceded his doctor recently told him that he was "all right" and needed to go to the doctor's office periodically for a checkup. While Wright's condition may have been serious at one point in time, it does not have the severity or duration to amount to a "disability" under the ADA.

At his deposition, Wright testified he is still able to hear, see, drive, climb stairs, engage in sexual relationships, eat, and participate in everyday life activities despite his medical condition. Presumably, Wright's disability claim rests on his limited ability to work. Generally, courts will only find "working" substantially limited if the "disabled" individual is unable to participate in a broad range of jobs. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999). The inability to perform just one type of job or one aspect of a job does not constitute a substantial limitation to one's ability to work. 29 C.F.R. § 1630.2(j)(3)(i).

Here, Wright's heart condition and depression affected his ability to work in two ways. First, he is not able to lift over twenty pounds or push/pull more than fifty pounds. Prior to his diagnosis, Wright regularly performed pushing and lifting actions during his employment with FMCTI. The Fifth Circuit has held restrictions on lifting do not amount to a substantial impairment on one's ability to work. *Pryor*, 138 F.3d at 1027. Wright admitted his ability to do his job has not been substantially limited by his heart condition. When asked whether he could perform all the duties of his

9

employment upon his return to work, Wright replied "I couldn't do no lifting, but I could do some of the duties, yes, the same things that I was supposed to do. I could do them." Therefore, the Court determines Wright's ability to work has not been substantially affected by his limited ability to lift, push, or pull.

Second, Wright's heart medication often left him groggy and unable to concentrate while at work. Judgment of whether one's disability substantially impairs a life activity is made of the person while he is in a medicated state. *Sutton*, 527 U.S. at 482 (holding a person whose impairment is corrected by medication does not have a disability as a matter of law). Therefore, the Court will give consideration to Wright's ability to work while on medication. Wright testified at his deposition the medication "made [him] druggy" and affected his ability to perform the duties of his employment "to a certain extent." However, Wright's symptoms, such as occasional drowsiness, do not exclude Wright from a broad range of occupations. Here, because Wright's condition only affected his ability to perform one aspect of his job and left him fully capable of performing other aspects of his employment, Wright's medical impairment does not substantially limit his ability to work.

Moreover, had Wright's heart condition and depression substantially limited his ability to perform his particular job, this would not foreclose other job opportunities not affected by physical limitations. Wright admitted he was capable of performing the

10

light duty work.  Because Wright's restrictions exclude only occupations requiring lifting and pushing/pulling requirements, he is not excluded from a broad range of employment such that his ability to work has been substantially limited.  Therefore, Wright was not "disabled" as defined by the ADA.

B.     FMCTI did not regard Wright as disabled

Even if Wright is not disabled within the meaning of the ADA, he may still satisfy the first prong of his *prima facie* case if FMCTI regarded him as disabled.  A company regards an employee as disabled in the following conditions: (1) the employee has an actual impairment, and, although the impairment does not substantially limit any major life activities, the employer treats the employee as though it does; (2) the employee has a substantial impairment that limits a major life activity only because of the negative reaction of others toward the impairment; and (3) the employee is not impaired, but the employer treats the employee as though he has an impairment that substantially limits a major life activity.  *Bridges v. City of Bossier*, 92 F.3d 329, 332 (5th Cir. 1996) (citing *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 727-28 n.19 (5th Cir. 1995)).  It is undisputed Wright had a health condition of which FMCTI was aware.  Nevertheless, there is no evidence FMCTI treated Wright as having an impairment that substantially limited any major life activities.  Other than the restrictions on lifting, pushing, and pulling, FMCTI was apprised of no other limitation

11

on Wright's ability to work or function on a daily basis.  Wright argues his receipt of short-term disability benefits from FMCTI is a testament to the company's recognition of a substantially limiting disability.   However, FMCTI's acceptance of Wright's disability for purposes of their own disability plan does not equate acceptance of disability under the ADA's definition.  *Weigel v. Target Stores*, 122 F.3d 461, 467-68 (7th Cir. 1997); *see also Bennett v. Calabrian Chems. Corp.*, No. 04-41056, slip op. at 1 (5th Cir. Mar. 21, 2005) (unpublished) (recognizing the definition of "disability" under the ADA is more narrow than the definition of "disability" for purposes of a company's short-term disability program).   Unlike the ADA, FMCTI's short-term disability plan is not limited to those with conditions that substantially limit a major life activity.[7]   Because FMCTI retained Wright's employment for over a year after his diagnosis, FMCTI recognized Wright's heart condition did not substantially limit his ability to work.

Wright also fails to present evidence of FMCTI's negative reaction toward his health conditions such that it substantially limited a major life activity.   At his deposition, Wright testified that only select people in Human Resources and direct

---

[7]FMCTI's short-term disability program defines disability as "[a] medically disabling illness or injury that restricts [an employee] from performing the necessary duties of [his or her] job or another job for which [he or she] is qualified or could be qualified by virtue of experience, training, or education for up to a 26-week period."

supervisors knew of his heart condition and depression. While he does allege supervisors reprimanded him for slight mistakes, Wright does not present more than mere allegations that FMCTI was overly meticulous or treated him differently than non-disabled employees. Wright never encountered a situation in which other employees of FMCTI antagonized him because of his condition, and FMCTI did not take any action against Wright that resulted in a substantial limitation on his ability to perform major life activities, such as work.

C.      Wright was not qualified for his position at FMCTI at the time of his termination

To meet the third prong of his *prima facie* case, Wright must show he was qualified to be an assembler at the time FMCTI terminated his employment. *See* 42 U.S.C. § 12112(a); *see also Holtzclaw v. DSC Communications Corp.*, 255 F.3d 254, 258 (5th Cir. 2001). The ADA defines "qualified individual with a disability" as one who, despite his impairment, is still capable of performing the essential duties of his employment, with or without reasonable accommodation. *See* 42 U.S.C. § 12111(8) (2000); *Holtzclaw*, 255 F.3d at 258. Thus, Wright must either prove he was capable of performing the essential functions of his job or, had FMCTI made reasonable accommodations, Wright would have been able to perform the essential functions of his job. *See Chandler v. City of Dallas*, 2 F.3d 1385, 1393-94 (5th Cir. 1993)

(applying same standards in a rehabilitation case). The burden rests on Wright to prove he was qualified to work as an assembler at the time of his termination. *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 806 (1999).

FMCTI contends Wright was unable to perform essential job functions due to the restrictions on lifting, excessive absenteeism, and negative effects of his medication. Under the Code of Federal Regulations, courts will find a job function is an essential aspect of one's employment if: (1) the purpose of the job is to perform that function, (2) the number of employees limits the availability of replacement workers, or (3) the position is highly specialized and the individual was hired for his experience or ability to perform the function. 29 C.F.R. § 1630.2(n)(2). In addition, the Fifth Circuit recognized the ability to attend work on a regular basis is an essential function of one's job. *See, e.g., Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996). In making the inquiry whether a particular facet of a job is an essential function, courts will give deference to the employer's view of what aspects of a job are essential. 42 U.S.C. § 12111(8).

Here, Wright contends he was qualified for his employment because his 2002 performance evaluation indicated he could perform his job despite his disability. However, Wright's evaluation concerned his ability to perform the essential functions of his light duty job, which is not at issue. The Court must analyze whether Wright was

14

qualified for his assembler job on May 28, 2003, the time of his termination.  *See* 42 U.S.C. § 12112(a); *see also Holtzclaw,* 255 F.3d at 258*; Tullos v. City of Nassau Bay*, No. 04-20335, 2005 WL 1385828, at *4 (5th Cir. June 10, 2005) (unpublished).  At that time, Wright was no longer performing his light duty job, but was working as an assembler.  With regard to his job as an assembler, Wright admitted he was limited in his ability to perform essential duties.  When asked whether he could perform his job while "druggy" from heart medication and restricted from lifting, pushing, or pulling, Wright conceded he could perform it only "to a certain degree."  Similarly, he admitted "[he] couldn't do no lifting, but [he] could do some of the duties."  Because FMCTI recognized Wright was limited in his ability to complete essential tasks, it transferred Wright to another department to perform light duty work.

FMCTI also argues it attempted to accommodate Wright's limitations, although it was not required to under the circumstances.  Under the ADA, "reasonable accommodation" may include assigning a disabled person to an unoccupied job position and modifying an employee's work schedule.  42 U.S.C. § 12111(9).  An employer is not required to modify job duties, create light duty work, or hire new employees in order to accommodate disabled persons.  *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 295 (5th Cir. 1998).  Moreover, if an employee is unable to perform an essential function of his job without assigning the duty to another, he cannot

be accommodated as a matter of law.  *Id.*  Although no required to do so, FMCTI transferred Wright to another department to perform light duty work, but this accommodation proved to be a failure as FMCTI was not satisfied with Wright's performance and moved him back to his previous job.[8]  Wright was not capable of performing the duties of his assembler position such as lifting, pushing, and pulling, and no accommodation by FMCTI could alter this fact.

Since Wright's diagnosis in January 2002, he missed over four months of work due to his health condition.  In doing so, Wright failed to perform an essential function of his employment, specifically daily attendance.  During Wright's leave, FMCTI had to assign others to do Wright's work, which is not a necessary accommodation under the ADA.  Because Wright admitted he was limited in his ability to perform his job as an assembler and has not demonstrated a reasonable accommodation, which would remedy this limitation, Wright has not met his burden to prove he was qualified under the ADA to work as an assembler.

D.   Wright was not replaced by or treated less favorably than a non-disabled person.

---

[8]FMCTI also accommodated Wright by providing him with short-term disability benefits while he was out on medical leave.  *Morton v. GTE N. Inc.*, 922 F. Supp 1169, 1180 (N.D. Tex. 1996).

To satisfy the fourth prong of the *prima facie* case of discrimination on the basis of disability, Wright must show FMCTI replaced him with a non-disabled individual or treated him less favorably than non-disabled individuals.  *Burch*, 119 F.3d at 320. While Wright was not replaced by any individual, disabled or non-disabled, after FMCTI terminated his employment, he alleges FMCTI treated him less favorably than non-disabled employees.   Wright asserts FMCTI purposefully gave him more complicated tasks and was eager to reprimand him for mistakes when compared to other employees.   After his supervisor gave him a performance warning, Wright testified "and the least little thing I would do, if I moved a part with the forklift or bump something, he would write that down.  I felt like he was trying to find some kind of reason to fire me."   Furthermore, Wright admitted his previous supervisor, the individual about whom he had the most complaints, treated quite a few people in the department as he had treated Wright although the other employees were not disabled. Wright is unable to substantiate any of his claims and fails to name any disabled person terminated from FMCTI.  Mere allegations are insufficient to create a question of fact defeating a summary judgment motion.  *Anderson*, 477 U.S. at 248.  Also, Wright conceded FMCTI disciplined and terminated non-disabled employees who failed to comply with the company's policy on absenteeism.  Therefore, Wright cannot establish

the fourth prong of a *prima facie* case of discrimination.

CONCLUSION

Because Wright cannot establish three of the four prongs of a *prima facie* case of discrimination under the ADA, summary judgment in favor of FMCTI is appropriate.[9]  Given the foregoing, the Court hereby

ORDERS that Defendant FMC Technologies, Inc.'s Motion for Complete Summary Judgment (Document No. 12) is GRANTED.

SIGNED at Houston, Texas, on this 1st day of July, 2005.

_____

DAVID HITTNER

United States District Judge

---

[9]Because Wright cannot establish a *prima facie* case, the Court declines to engage in the remaining steps of the burden-shifting analysis.

18